IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT MINERLY,<br># K63470,<br><br>          **Plaintiff,**<br><br>vs.<br><br>NICK NALLEY,<br>PAUL YATES,<br>OFFICER APARICIO,<br>OFFICER MEZO,<br>OFFICER VALDEZ, AND<br>JOHN R. BALDWIN,<br><br>          **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 19-cv-0467-SMY<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Robert Minerly, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Robinson Correctional Center ("Robinson"), brings this action for alleged deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff seeks relief for restrictions on his ability to access the courts or utilize grievance procedures while incarcerated at Big Muddy River Correctional Center ("BMRCC").

The Complaint is subject to preliminary review under 28 U.S.C. § 1915A, which requires the Court to filter out non-meritorious claims. 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Complaint are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

1

## The Complaint

Plaintiff claims he was retaliated against and prevented from having full access to the grievance system or legal system at BMRCC. Based on the allegations set forth in the Complaint (Doc. 1, pp. 1-90), which will be addressed in more detail herein, the Court finds it convenient to divide the *pro se* action into the following Counts, consistent with Plaintiff's designation of his claims in the Complaint:

**Count 1:** Defendant Nalley seized Plaintiff's legal materials, issued a disciplinary ticket, and engaged in a course of harassing conduct against Plaintiff as retaliation for Plaintiff's grievances about his behavior.

**Count 2:** Defendants Nalley, Yates, and Aparicio entered a conspiracy to prevent Plaintiff from bringing any claims against them.

**Count 3:** Defendant Valdez violated Plaintiff's due process rights when he confronted him in the shower area of the prison about a disciplinary ticket and gave him a short disciplinary hearing.

**Count 4:** Class action claim regarding the adequacy of the grievance procedures in the IDOC.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

Plaintiff alleges that his trouble began as early as 2016 when he initiated a lawsuit against various IDOC employees (Case No. 16-CV-782). (Doc. 1, p. 8). On April 24, 2017, Nick Nalley allegedly rummaged through Plaintiff's legal property, made derogatory comments, and seized the materials in a plastic trash bag. (*Id.* at 9). Plaintiff alleges that among the materials seized, he lost

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

a full draft of a case he intended to file, as well as his legal books and dictionary. (*Id.* at 10). He complained to Warden Sullivan and other defendants and was ultimately granted a pass to visit Nalley's office. (*Id.*). Nalley allegedly verbally harassed Plaintiff about existing lawsuits and the possibility that Plaintiff would file more in the future. (*Id.*). Plaintiff was allowed to retrieve some of his legal materials from a cart. (*Id.*). Nalley ultimately wrote Plaintiff a ticket for possession contraband. (*Id.*).

The next day, Plaintiff learned from another inmate that Mezo and Nalley were planning to move him from one cell to another as retaliation. (*Id.*). Plaintiff complained to the librarian, Jenny Wilson, and wrote to his lawyer about the retaliation. (*Id.*). On April 26, 2017, Plaintiff was summoned from the prison kitchen to move his belongings to a new cell. (*Id.*). During the move, he notified Mezo that he would conduct a hunger strike to protest the move. (*Id.*). In response, Mezo wrote a disciplinary ticket on April 27, 2017 and put Plaintiff in segregation. (*Id.*).

While Plaintiff was in segregation, Valdez came to the shower area on April 28, 2017 and briefly asked Plaintiff about the contraband disciplinary ticket from Nalley. (*Id.* at 12). Shortly after his shower, Plaintiff was taken to a disciplinary hearing about the ticket from Mezo. (*Id.*). He was found not guilty of the Mezo ticket. (*Id.*). He continued a hunger strike during this time. (*Id.*).

On April 29, 2017, Lieutenant Berkley tried to speak to Plaintiff about the hunger strike to no avail. (*Id.* at 13). On the same day, Warden Jason Garnett spoke with Plaintiff about the hunger strike and his housing location. (*Id.*). Plaintiff informed Garnett about the retaliation and other conduct by Mezo and Nalley. (*Id.*). Garnett indicated that he did not want to return Plaintiff to his normal housing unit because of potential retaliation, but he agreed to move Plaintiff's old cellmate so that they could be housed together in exchange for Plaintiff ending the hunger strike.

(*Id.*). Plaintiff believes that Warden Garnett ultimately removed Nalley from the Internal Affairs office. (*Id.*).

Plaintiff alleges that on May 1, 2017, he saw Aparicio destroy evidence of the disciplinary ticket that Defendant Nalley had written him. (*Id.* at 14). He was moved from segregation to a cell with his old cellmate. (*Id.*). A few days later, on May 5, 2017, Plaintiff was demoted to "C-grade" for the Nalley contraband ticket. (*Id.*).

On May 8, 2017, Warden Garnett signed off on a grievance and Plaintiff refiled it through "normal channels." (*Id.*). On May 10 and 11, 2017, Nalley worked in Plaintiff's new housing unit and harassed Plaintiff. (*Id.*). On May 25, Nalley harassed Plaintiff on his way to work. (*Id.* at 15).

Plaintiff alleges that on May 26, 2017, Yates impeded his ability to exhaust administrative remedies by rejecting all his grievances about Nalley. (*Id.*). Plaintiff further alleges that Yates used photocopies to alter the last two pages of his grievance, thus creating a false basis to deny the grievance. (*Id.*). Plaintiff alleges that none of the five grievances he filed were investigated. (*Id.*). In September and December 2017, Nalley threatened Plaintiff with physical harm and harassed him. (*Id.* at 15-16). Plaintiff's appointed counsel in another case contacted the State Attorney's Office to request that Nalley not be allowed near Plaintiff. (*Id.*). After the December harassment, Plaintiff was relocated to Robinson.[2] (*Id.* at 16).

## Discussion

### Count 1

An inmate has a First Amendment right to file grievances and lawsuits. *Id.; Watkins v. Kasper,* 599 F.3d 791, 798 (7th Cir. 2010). "An act taken in retaliation for the exercise of a

---

[2] Plaintiff appended 60 pages of exhibits to his Complaint, including grievances, but the contents of the exhibits need not be reviewed to screen this Complaint.

constitutionally protected right violates the Constitution." *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000). To prevail on a retaliation claim, an inmate must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted).

Plaintiff alleges that after he initiated grievances or litigation against Nalley, Nalley destroyed or confiscated his legal materials, gave him a disciplinary ticket, and engaged in a course of harassment. These allegations are sufficient to show that Plaintiff engaged in a protected activity of filing a grievance, that Nalley took adverse actions, and that the actions could have deterred a reasonable person from future conduct. Therefore, Count 1 will proceed against Nalley.

**Count 2**

"It is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Here, Plaintiff alleges that Nalley, Yates, and Aparicio reached a conspiracy to prevent him from pursuing litigation or grievances and that this occurred during his incarceration at BMRCC in 2017. Moreover, Plaintiff claims he saw each of these individuals take personalized actions to prevent him from pursuing grievances or litigation. This information is sufficient for Count 2 to proceed against Nalley, Yates, and Aparicio.

**Count 3**

Due process requires that a prisoner receive advance written notice (at least 24 hours beforehand) of disciplinary charges alleged against him. *See e.g. Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454, (1985); *Wolff v. McDonnell*, 418 U.S. 539, 563, (1974). Such notice

5

allows the charged party a chance to clarify the charges against him and marshal a defense. *Wolff*, 418 U.S. at 564. Inmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals, *Wolff*, 418 U.S. at 566, but there is no right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary, *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003), *citing Forbes v. Trigg*, 976 F.2d 308, 317–18 (7th Cir. 1992). Due process also requires that a determination of guilt be based on "some evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985); *see Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

The Supreme Court held in *Edwards v. Balisok,* 520 U.S. 641, 648 (1997) that a prisoner may not pursue a Section 1983 damages claim about due process at a prison disciplinary hearing where finding that damages were due would necessarily imply the underlying disciplinary hearing was invalid. *Edwards* does not bar review of prison disciplinary proceedings under § 1983 unless that review could imply the invalidity of the plaintiff's continued custody. *See Muhammad v. Close*, 540 U.S. 749, 754–55 (2004); *Simpson v. Nickel*, 450 F.3d 303, 306–07 (7th Cir. 2006). In the absence of the possibility of collateral review for the outcome of a disciplinary proceeding, recourse is available under § 1983. *Simpson,* 450 F.3d at 306-07.

Plaintiff alleges that Defendant Valdez spoke to him about the disciplinary ticket but a hearing was never conducted. He also allegedly saw Officer Aparicio destroy evidence of the ticket from Nalley, but he still received a demotion to C-Grade. Taking as true the allegation that no hearing was held, Plaintiff has stated a valid claim against Valdez. While it is unclear at this juncture whether an *Edwards* bar would apply, based on the ambiguity in the record, the Court finds it appropriate to allow Count 3 to proceed against Valdez.

## Count 4

Plaintiff alleges he has been deprived appropriate access to the grievance procedures due to prison employees failing to respond to his grievances or summarily responding rather than correcting misconduct of their inferiors. In *Grieveson v. Anderson*, 538 F.3d 763, 772-73 (7th Cir. 2008), the Seventh Circuit considered a similar inmate claim that the sham nature of a grievance procedure caused him harm. The Court concluded that because Grieveson did not plausibly tie a sham procedure to his alleged harm (beatings by fellow inmates) he failed to state a claim. It also noted that prisoners do not have any due process liberty interest in any grievance procedure, let alone a fully functional procedure. *See id.* at 772, *citing Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

Prisoners are required to utilize the grievance procedure to maintain a federal lawsuit, but there are occasions when exhaustion is excused. Administrative remedies are considered to be unavailable under the PLRA, when prison officials fail to respond to a prisoner's grievances. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (citations omitted). In addition, "exhaustion is not required when the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance." *Hill v. Snyder*, 817 F.3d 1037, 1041 (7th Cir. 2016). A plaintiff who can demonstrate the unavailability of administrative remedies is relieved from the obligation to exhaust administrative remedies and can proceed with his or her suit. *Lewis*, 300 F.3d at 833.

Plaintiff's claims about the inadequacy of the grievance procedure are barred on his behalf, or on behalf of any other potential class members, because prisoners are not entitled to a grievance procedure, let alone a procedure that functions to their satisfaction. Accordingly, Count 4 is dismissed with prejudice against all defendants.

### Request for Injunctive Relief

Plaintiff's requests injunctive relief in the form of an updated and satisfactory grievance procedure. However, Count 4 of the Complaint was dismissed for failure to identify a cognizable claim. Accordingly, Plaintiff's request for injunctive relief is denied as moot.

### Disposition

**IT IS ORDERED** that the Complaint survives preliminary review under 28 U.S.C. § 1915A as follows: **COUNT 1** will proceed against Defendant Nalley; **COUNT 2** will proceed against Defendants Nalley, Yates, and Aparicio; **COUNT 3** will proceed against Defendant Valdez; and **COUNT 4** will be dismissed with prejudice as to all defendants.

**IT IS ORDERED** that Defendants Baldwin and Mezo are **DISMISSED** without prejudice because Plaintiff failed to state an enumerated count against them.

With respect to **COUNTS 1, 2, 3,** and **4**, the Clerk of Court shall prepare for Defendants **NALLEY, YATES, APARICIO,** and **VALDEZ**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS ORDERED** that, if a defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending

the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g).

**IT IS ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

**IT IS ORDERED** that this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 8/7/2019**

                                                 s/ Staci M. Yandle
                                                 **STACI M. YANDLE**
                                                 **United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**