UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| ROBERT MINERLY, | ) |
| --- | --- |
| Plaintiff, | ) ) ) |
| vs. | ) No. 3:19-CV-0467-GCS ) |
| NICK NALLEY, PAUL YATES, ALLEN APARICIO, and RANDY VALDEZ, | ) ) ) ) ) ) ) |
| Defendants.[1] | ) |

## MEMORANDUM and ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION

Before the Court is a motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendants Nick Nalley, Allen Aparicio, Randy Valdez and Paul Yates (Doc. 25). Specifically, Defendants argue that Plaintiff Robert Minerly failed to exhaust his administrative remedies because he did not properly complete the grievance process before filing the lawsuit. Minerly opposes the motion arguing that Defendants have impeded his ability to exhaust his administrative remedies (Doc. 27).

---

[1] The Court **DIRECTS** the Clerk of the Court to change the docket to reflect Defendants' correct names as contained in their answer (Doc. 18).

On February 26, 2020, the Court held a hearing on the summary judgment motion and heard testimony from Sarah Johnson, a chairperson with the Administrative Review Board ("ARB").[2] The Court also heard from Minerly and took the matter under advisement. Based on the following reasons, the undersigned **GRANTS** the motion for summary judgment on the issue of exhaustion of administrative remedies.

Pursuant to 42 U.S.C. § 1983, Minerly, filed a complaint for deprivations of his constitutional rights that occurred while he was housed at Big Muddy River Correctional Center ("Big Muddy") (Doc. 1). Minerly seeks relief for restrictions on his ability to access the courts or utilize the grievance procedures while at Big Muddy. The Court, after conducting the preliminary review pursuant to 28 U.S.C. § 1915A, allowed Minerly to proceed on the following claims:

> Count 1: Defendant Nalley seized Minerly's legal materials, issued a disciplinary ticket, and engaged in a course of harassing conduct against him as retaliation for Minerly's grievances about Nalley's behavior.
>
> Count 2: Defendants Nalley, Yates and Aparicio entered into a conspiracy to prevent Minerly from bringing any claims against them.
>
> Count 3: Defendant Valdez violated Minerly's due process rights when Valdez confronted him in the shower area of the prison about a disciplinary ticket and gave him a short disciplinary hearing.

(Doc. 9).

---

[2] Johnson testified about the grievance process in the IDOC. She also testified as to why she returned Minerly's 5 grievances to him on June 22, 2017. She further testified that on July 18, 2017 the ARB denied one grievance that contained the 5 other grievances and noted that the ARB did not review the prior 5 grievances because they were not addressed by the facility.

## FACTS

Minerly is an inmate within the Illinois Department of Corrections ("IDOC") and currently housed at Robison Correctional Center ("Robinson"). At the time of the allegations in the complaint, Minerly was housed at Big Muddy.

According to the ARB records, Minerly sent five grievances dated April 26, 2017, May 18, 2017, May 18, 2017, May 23, 2017 and May 30, 2017 to the ARB. Those grievances were received by the ARB on June 2, 2017 and related to alleged actions by Nalley, Aparicio, Valdez and Yates. (Doc. 26-1, p. 27-43; ARB Report Bates 000041-00057). The April 26, 2017 and the May 23, 2017 grievances involve alleged actions by Nalley. The two May 18, 2017 grievances involve alleged actions by Nalley, Valdez and Aparicio. The May 30, 2017 grievance involves alleged actions by Yates.

On May 25, 2017, Paul Yates, a grievance counselor, returned the April 26, 2017 grievance finding "grievance submitted is a photocopy, not original" and in another Memorandum returned the May 23, 2017 grievance finding "grievance is incomplete, no relief requested" (Doc. 26-1, p. 24-40; ARB Report Bates 000048-54). The grievances dated May 18, 2017 (2 grievances) and the May 30, 2017 grievance do not contain any responses from anyone at the facility.[3]

---

[3] In the April 26, 2017 grievance Counselor's Response section, there is a handwritten date of May 8, 2017 and nothing more except the June 2, 2017 Received Stamp from the ARB. Similarly, in the May 23, 2017 grievance Counselor's Response section, there is a handwritten date of May 24, 2017 and nothing more except the June 2, 2017 Received Stamp from the ARB. (Doc. 26-1, p. 35, 39; ARB Report Bates 000049, 000053).

On June 22, 2017, the ARB returned all five of the grievances to Minerly because they were not fully reviewed by the facility. Specifically, the ARB informed Minerly that he should provide the "original written Offender's Grievance, DOC 0046, including the counselor's response, if applicable. . . . a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and the Chief Administrative Officer's response, to appeal; <u>if timely</u>." *Id*. (emphasis in original)

Thereafter, Minerly filed another grievance # 49-7-17 on July 18, 2017 regarding the grievance process and attached the 5 prior grievances that were returned to him from the ARB (Doc. 26-1, p. 2-12; ARB Report Bates 000016-000026). On September 8, 2017, the ARB received the grievance, and on October 31, 2017, the ARB, through Ann Lahr, denied his grievance finding the issue was appropriately addressed by the facility. The ARB further noted that it did not review the five prior grievances attached because no grievance officer reviewed the grievances. The ARB also found: "[p]er Grievance Officer, all grievances have been handled properly. Per DR504.810.c)[], (revised 4/1/17) 'The original grievance form shall be deposited in the living unit mailbox or other designated repository.' Narratives on what previous grievances contained will not be addressed in this grievance response." John Baldwin, the Acting Director of the IDOC, concurred on November 1, 2017. *Id*.

## LEGAL STANDARDS

Summary Judgment is proper if the pleadings, discovery materials, disclosures and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The purpose

of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following sequence and procedures to be followed:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining
> that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

As an inmate confined within the IDOC, Minerly was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The

grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, the inmate can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must

be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures further allow some grievances to be submitted directly to the ARB for consideration. *See* 20 ILL. ADMIN. CODE § 504.870(a). Those grievances include:

1) Decisions regarding protective custody placement, including continued placement in or release from protective custody.

2) Decisions regarding the involuntary administration of psychotropic medication.

3) Decisions regarding disciplinary proceedings that were made at a facility other than the facility where the offender is currently assigned.

4) Other issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues.

20 ILL. ADMIN. CODE § 504.870(a)(1-4).

## ANALYSIS

Defendants argue they are entitled to summary judgment because none of the five grievances appealed to the ARB show any evidence that the grievances were received or reviewed by the grievance officer, or by the Chief Administrative Officer ("CAO"). Defendants maintain the ARB returned the grievances without review by the ARB because they lacked the grievance counselor and/or grievance officer's response. Defendants further maintain that Minerly knows the grievance process, and in the past has utilized it correctly and successfully. This time, however, Minerly incorrectly appealed the grievances to the ARB regarding the allegations in this lawsuit. Minerly counters that he followed all the grievance procedures and because Yates did not respond to the grievances, he went outside the procedures and straight to the ARB. The Court disagrees with Minerly and does not credit his testimony.

First, the record clearly indicates that Minerly was aware of the grievance procedures at Big Muddy. Minerly testified that he knew of the grievance process, the appeal times and the steps regarding the exhaustion of administrative remedies. Minerly likewise understood such steps when he filed his grievances with the prison and when he filed his complaint. The record reflects that in the past Minerly has successfully and correctly utilized the grievance procedures in other matters. Minerly even stated he was a jail house law clerk, which lends credence to the fact that he was well-versed with the relevant and applicable grievance procedures.

Next, the Court notes that in some circumstances an inmate's ability to exhaust the grievance process may be thwarted. This can occur, for example, if an inmate properly submits a grievance, but does not receive a response. In such circumstances, an inmate's administrative remedies are arguably no longer available to him, and the inmate may thus proceed with a lawsuit. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000)(noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole*, 438 F.3d at 809 (noting that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources).

However, such a situation does not exist under the circumstances of this case. IDOC grievance procedure requires an inmate to first attempt to resolve grievances informally through his grievance counselor, and if the grievance remains unresolved, inmates shall file a written grievance with the grievance officer. With respect to the April 26, 2017 grievance, the May 18, 2017 grievances, the May 23, 2017 grievances and the May 30, 2017, the record is clear that these grievances were not fully exhausted. Specifically, as to three of the grievances, Minerly did not give the grievance counselor adequate time to respond or give the grievance counselor the option to resolve his grievances informally. As to the other two grievances the record reflects that Yates returned them for not being submitted properly.

Further, and most importantly, Minerly did not send the written grievances to the grievance officer. Instead, he immediately appealed the five grievances together to the

ARB on May 30, 2017, thus bypassing the grievance officer. For example, Minerly concedes he did not wait for a response from the grievance counselor, that he did not send the grievances to the grievance officer, and that he instead appealed directly to the ARB. The record reflects the same in that Minerly appealed the April 26, 2017 grievance 34 days after writing the grievance, the May 18, 2017 grievances 12 days after writing the grievance, the May 23, 2017 grievance 7 days after writing the grievance, and the May 30, 2017 grievance the same day he wrote it. The aforementioned grievances were received by ARB within days after they were written, which is clearly not enough time to submit the grievances to the grievance officer for consideration and have them returned before submitting them to the ARB.

Furthermore, the record reflects that Minerly did not heed the ARB's guidance when it returned the grievances on June 22, 2017. The ARB specifically told Minerly why his grievances were deficient. The ARB further informed Minerly how to rectify the problems with his grievances and told him to resubmit the grievances if timely. Had Minerly followed the ARB's advice, he may have fully exhausted his administrative remedies.[4] Minerly did nothing to rectify the defects in these grievances until he attached them to grievance 49-7-17 dated July 18, 2017. Given the above facts, Minerly did not properly exhaust his administrative remedies as to his claim against Defendants.

---

[4] It appears that Minerly's grievances would have been timely had he followed the ARB's guidance. Under the grievance process, inmates have 60 days from the date of the incident to start the grievance procedure. *See* 20 ILL. ADMIN. CODE § 504.810(a). The incidents in the five grievances occurred from April 24, 2017 through May 23, 2017 and the ARB returned the grievances on June 22, 2017.

## Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment on the issue of exhaustion (Doc. 25). The Court **DISMISSES without prejudice** Minerly's complaint for failure to exhaust administrative remedies. The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and close the case.

**IT IS SO ORDERED.**

**Date:  March 6, 2020.**

Digitally signed by Magistrate Judge Gilbert C. Sison
Date: 2020.03.06 12:50:22 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**